[No. 4478.]

# NATIONAL GOLD BANK AND TRUST COMPANY *v.* MARION J. McDONALD.

CHECKS HANDED A BANK BY A DEPOSITOR.—When checks on another bank are handed by a depositor to the receiving teller of a bank, and are by the teller credited on the depositor's pass-book, they are only received for collection, and if not paid on presentation, may be returned and the credit in the pass-book canceled.

IDEM.—If a customer of a bank hands the receiving teller a check drawn by another person upon the same bank, and at the same time hands him his pass-book, and the teller receives the check and enters a credit for the amount in the pass-book, but no entry is made on the books of the bank, and nothing else is said or done, and the drawer has no funds in the bank, the check may be returned to the depositor and the credit in the pass-book canceled.

IDEM.—In such case, a finding by the court that the check was received as a cash deposit is erroneous.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

Action to recover the sum of seven hundred and eighty-five dollars which the defendant had drawn out of the bank. The defendant claimed that the check spoken of in the opinion had paid the amount. The defendant had judgment and the plaintiff appealed.

The other facts are stated in the opinion.

*S. Heydenfeldt,* for the Appellant.

The relation between the banker and the depositor is that of simple debtor and creditor. (*Bank of Northern Liberties* v. *Jones,* 42 Penn. 537; *Marsh* v. *Oneida Central Bank,* 34 Barb. 298; Morse on Banking, 26; Grant on Banking, 3.)

Money deposited by a customer in a bank is money lent; checks deposited with a bank are for collection—bringing the relation of banker and customer to that of debtor and creditor in the one case, and principal and agent in the other. The entry of the amount of the check in the depositor's pass-book does not constitute a credit or a payment by the bank; such a deposit is merely given and held for collection. (Morse on Banking, 320; *Boyd* v. *Emerson,* 2 Adolphus & Ellis, 184; *Kilsby* v. *Williams,* 5 Barnewall & Alderson, 816; S. C. 1 Dowling & Ryland, 476; Chitty on Bills, *390.)

The only distinction made between checks on other banks and checks on the same bank where the deposit is made, is the duty of applying the funds of the drawer to meet the check as soon as the bank receives any. If there then, or if they are subsequently deposited while the bank holds the check, it becomes at once the duty of the bank to apply the funds of the drawer of the check to the payment of the same, even though the drawer is indebted to the bank. (*Kilsby* v. *Williams,* 5 Barnewall & Alderson, 815; Morse on Banking, 321; *Boyd* v. *Emerson, supra; Munn* v. *Burch,* 25 Ill. 35.)

*Delos Lake,* for the Respondent, confined his argument principally to the ruling of the Court in striking out the evidence of custom, and to the fact that the court below found that it was a cash deposit; and cited *Oddie* v. *The Nat. City Bank of N. Y.* (45 N. Y. 735.)

By the Court, CROCKETT, J.:

The defendant and one Barton kept each a general deposit account with the plaintiff, a banking corporation doing a general banking business; and the account of the defendant being overdrawn, he was notified by the plaintiff to make it good.   While the account remained thus overdrawn the defendant, on the 22d of May, sold to Barton certain mining stocks, and on that day received from him therefor, Barton's check on the plaintiff for seven hundred and eighty-five dollars.   About two o'clock of the same day, the defendant presented the check with his pass-book to the plaintiff's receiving teller, who took the check and entered a credit for the amount in the pass-book; but made no entry of it on the books of the bank.   When the check was drawn and presented to the receiving teller, Barton's account was overdrawn and he had no funds to his credit in the bank then, or at any time afterwards.   About three o'clock of the same day, the plaintiff returned the check to the defendant, and notified him that Barton had no funds to his credit, and the check was not good; but the defendant refused to receive the check, alleging that it had been accepted by the bank as cash, and placed to his credit as such in his pass-book.   Thereupon the defendant made good his account at the bank, except as to the seven hundred and eighty-five dollars, represented by the check; and if he is entitled to be credited with that sum, the plaintiff has no cause of action.   If, on the other hand, he is not entitled to the credit, his account remains overdrawn to that amount, and the plaintiff is entitled to judgment.

At the trial the plaintiff proved, subject to the defendant's objection, that for many years there had been a usage in all the banks of San Francisco, by which, when checks were presented by a depositor to the receiving teller for deposit, he received the checks, whether drawn on that or another bank, and entered a credit for them in the pass-book; that the bank then collected the checks, and when paid entered the proper credits to the depositor on the books of the bank; but if a check drawn on another bank was not paid

on due presentation, or if it was ascertained within banking hours on the same day that a check drawn on the same bank in which the deposit was made was not good for want of funds to the drawer's credit, the usage was to return the check to the depositor and cancel the credit in the passbook. On the defendant's motion this evidence was stricken out as inadmissible, and a judgment entered for the defendant, from which the plaintiff appeals.

When checks on another bank are deposited with the receiving teller, and a credit for them entered in the passbook, it is not contended that they are received as cash, or otherwise than for collection. If not paid on due presentation they may be returned, and the credit in the pass-book canceled. But it is insisted that a different rule obtains in respect to checks drawn on the same bank; and the argument is that the officers of the bank must be presumed to know, and are chargeable with notice of the fact, whether the drawer has funds to his credit when the check is offered for deposit; that, if in fact he has no funds to his credit, and the receiving teller nevertheless receives the check and enters a credit for it in the pass-book, the bank must be held to have adopted the check, and to have received it as cash, assuming the risk of its being made good and of the solvency of the drawer. The argument assumes that the mere fact of the receipt of the check by the receiving teller, and the entry of it in the pass-book, of itself implies an agreement by the bank to accept it as *cash*, and is to be deemed in law as equivalent to the payment of the check. The proof shows that nothing more was done in this case. The check was handed by the defendant's clerk to the receiving teller, together with the pass-book, without any remark, so far as is shown by the evidence, and the teller made the entry in the pass-book and handed it back. If anything more occurred, tne evidence fails to disclose it. Does this transaction of *itself* import an agreement by the bank to accept the check as *cash?* Is it in law equivalent to a payment of the check? There can be no doubt that if the bank, through its teller, expressly, or by reasonable implication, from his acts and

declarations at the time, agrees to accept the check as *cash,* and to enter a credit to the depositor for the amount, it will be bound by the agreement, whether the drawer of the check has funds to his credit or not. But the question here is, whether the mere receipt of the check by the teller and the entry in the pass-book, nothing more being said or done, of itself constitutes, in law, or is to be deemed equivalent to, such an agreement. In his late work on Banks and Banking (pp. 320, 321), Mr. Morse thus states the rule in such cases: "If the bank, as probably happens in the great majority of cases, simply takes the check without especial remark, and notes it in the depositor's bank-book, thus treating it in every respect as if it were a check upon any other bank, instead of upon itself, these facts do not create a payment, or render the bank liable for the amount to the depositor. The officers having dealt with the check in the ordinary form, have placed the bank only under the ordinary obligation, to wit, that of collecting the check in due course of business for the benefit of the depositor. The collection is not complete, and the bank does not become indebted to the depositor for the amount until the credit has been actually transferred. But, nevertheless, the depositor enjoys one advantage in this case, which he would not enjoy if the check were upon another bank. The duty of applying the funds of the drawer to meet it accrues as soon as the bank receives it. If there are then, or if there are subsequently deposited, while the bank holds possession of the check, funds to the credit of the drawer, the bank is bound to apply them to the payment of this in preference over any other check which shall be presented, or any other claim or lien which shall accrue *after* the deposit of this check." In support of these propositions the author refers to *Peterson* v. *Union National Bank,* 52 Penn. St. 206; *Boyd* v. *Emerson,* 2 Adl. and Ell. 184; *Kilsby* v. *Williams,* 5 Barn. and Ald. 815. In the case last cited, the plaintiff had deposited with his banker a check drawn upon the same bank by another person. The deposit was made in the usual way, and was received without objection. The drawer then had no funds to his credit, but subsequently made a deposit

sufficient to cover the check. Instead of applying the fund to the payment of the check, the bank paid it out on other checks subsequently presented; and the court held that the bank was liable to the depositor for the amount of the check. In delivering the opinion of the court, Abbott, C. J., said: "At the outset of this cause, I thought it was the duty of the bankers, under such circumstance, immediately to tell the person presenting a check for payment that they had not sufficient funds to honor it. But it was urged by Mr. Scarbett, and I thought there was great weight in the argument, that this might be productive of serious inconvenience, inasmuch as it is often impossible to ascertain, till the close of the day at the clearing-house, what sums of money may be paid in to each particular account, and what the drafts are upon it. I think, therefore, that the defendant might, in this case, receive the check in question, subject to its being honored or not, according to the course of Robertson's dealing with them on that day." The court, however, held the bank liable, on the ground that a sum sufficient to cover the check, was subsequently deposited by the drawer. In *Boyd* v. *Emerson, supra,* the facts were, that one Matson and the plaintiff each kept a deposit account with the defendant, a banker; and the plaintiff being the holder of a check drawn by Matson on the defendant's bank, called with the check at the bank, and while transacting some other business, concerning which the officer of the bank was making a memorandum, laid the check upon the counter, saying, "Place this to my account," or "to my credit." The bank officer said nothing in reply, and did not notify the plaintiff that Matson's account was then overdrawn, as it in fact was, and had often before been, with the permission of the bank. After the plaintiff left, the officer retained the check, but did not debit Matson with the amount, or credit the plaintiff with it, nor cancel the check. No funds having been deposited by the drawer to meet this check, it was returned in due time to the plaintiff as unpaid for want of funds, and the action was against the bank to recover the amount of the check. The only difference between that case and this is, that in that there

is no entry in a pass-book, while in this there was no express request that the amount of the check be placed to the account or credit of the depositor. The court decided that the bank was not liable; and in delivering the opinion of the court, Lord Denman, C. J., said: "If the plaintiff in delivering the check, had said at once, 'Cash me this check,' or 'Give me credit for it,' he must have drawn from Reader a distinct answer; but merely saying, 'Place it to my account,' he leaves it upon the usual terms, and subject to the contingencies to which bills or checks so paid in are liable; and if he received notice of dishonor in proper time, it was sufficient. * * * * I think the plaintiff when he presented the check should have given distinct notice whether he presented it as a check to be paid, or to be merely placed to his account like other securities. In the absence of such a statement by him, I draw the inference that the check was received in the latter character." All the other judges concurred in these views; and in his separate opinion, Williams, J., said: "It appears to me that this check was presented in the ordinary way in which a party pays in a bill to his banker; and there was nothing to prevent the banker from having time to make inquiries respecting it, as in the general case of bills so paid in." This observation applies with much force to the case at bar, in which it appears from the evidence that the check in question was presented to the receiving teller in the usual method in which checks are left for collection. We think this case is not distinguishable in principle from the case at bar.

The rule we intend to lay down is, that when a check on the same bank is presented by a depositor with his pass-book to the receiving-teller, who merely receives the check and notes it in the pass-book, nothing more being said or done, this does not of itself raise a presumption that the check was received as *cash* or otherwise than for collection.

But it is contended that the late case of *Oddie* v. *The National City Bank* (45 N. Y. 735), is strictly analogous to the case at bar, and should be deemed conclusive of the questions involved here. But the opinion of the court in that

case must be construed with reference to the facts proved ; which, in some important particulars, were quite different from the facts of the present case. In that case, *after* the check was deposited, and at a later hour of the same day, the drawer deposited a sum much more than sufficient to pay the check, and which was paid out on other checks or applied to make good a previous over-draft. There are material discrepancies in the two cases; and the New York case may well have been decided against the bank, on the sole ground that it misapplied the fund deposited *after* the check was received. All that was said by the court on points not necessarily involved in the decision of the cause, were at most but *obiter dictum:* and notwithstanding our great respect for the learning and ability of that court, we must decline to follow it, in so far as it shall appear, if at all, that in the course of its opinion it has stated propositions inconsistent with those we have announced.

In the case at bar, the court finds as a fact that the defendant presented the check for deposit *as cash,* and that the plaintiff " received it as such *cash* deposit, and entered the amount of the same to the credit of the defendant *as cash* in the said deposit book." On the motion for a new trial, one of the grounds specified and relied upon was that this finding was not justified by the evidence. It is not pretended that there was any evidence of an express agreement to the effect that the check was offered and received as a *cash* deposit; and the court must have reached that conclusion, as a deduction from the facts above stated. But for the reasons already given, we think the court erred in the deduction, and that the finding is not supported by the evidence.

As the judgment must be reversed for this error, we deem it unnecessary to determine whether the court erred in striking out the evidence in respect to usage.

Judgment and order reversed, and cause remanded for a new trial.

Mr. Chief Justice WALLACE delivered the following concurring opinion:

There is no dispute concerning the facts of the transaction in which this controversy originated.

The defendant and one Barton were customers of the plaintiff, and each kept with the plaintiff a general deposit account. Under these circumstances Barton drew a check upon the plaintiff in favor of the defendant, the check running, upon its face, to one Bogart, at the time the book-keeper of the defendant, and Bogart immediately indorsed the check and deposited it to the credit of the defendant with the receiving teller of the plaintiff, who thereupon made the usual entry in the pass-book of the defendant. This was about two o'clock P. M., and in about one hour thereafter the check was returned to the defendant by the plaintiff as not good. At the time of the deposit of the check the drawer had no funds in the bank, and had none there at any time afterward. No inquiries were made by Bogart at the time he deposited the check, and no special directions were given by him.

Upon these facts the court below held that the deposit of the check by Bogart was equivalent to a deposit by the defendant of that much *cash* to his credit, and that the plaintiff thereby assumed the payment of the check. In this I think that the court was in error. Had the check been drawn upon some other bank and deposited with the plaintiff, it is conceded that it would be taken to have been so deposited for purposes of collection merely. I think that the same interpretation must be given to the transaction, notwithstanding that the deposit of the check was made with the bank upon which it was drawn. The duties and obligations imposed upon the bank receiving the check were, under the circumstances, the same in all respects as though the check deposited had been drawn upon some other bank. I say " under the circumstances," for had the drawer afterwards, and before the returning of the check, been in funds at the bank, as was the fact in *Oddie* v. *The National City Bank of New York* (45 N. Y. 735), it would

have then become the duty of the bank to apply such funds to the payment of the deposited check, in preference to any check of Barton subsequently deposited or presented.

These views will be found well supported by the author-, ities cited in the opinion of Mr. Justice CROCKETT.

I concur that the judgment be reversed and the cause re- manded for a new trial.

Mr. Justice McKINSTRY did not express an opinion.