## Brice W. Hoag v. Benjamin F. Graves.

### *Principal and agent—Subagent—Liability.*

Plaintiff's cause of action, as stated in his declaration, is that defendant collected $500 for plaintiff through defendant's agent, and neglected and refused to pay plaintiff his share of the money. And it is held that the testimony shows conclusively that the agent referred to was plaintiff's agent, and that plaintiff failed to make out a case.

Error to Lenawee. (Lane, J.) Argued June 3 and 4, 1890. Decided July 2, 1890.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Watts & Smith*, for appellant.

*Benjamin F. Graves*, in *pro. per.*, and *Weaver & Bean*, for defendant.

CHAMPLIN, C. J. This action was commenced before a justice of the peace. The declaration was oral and informal, and included all of the common counts in *assumpsit*, and especially upon an agreement in which defendant agreed to collect an insurance policy of $1,000 for half, and collected $500 through his agent, and neglected and refused to pay plaintiff his half. Also on a contract in which defendant agreed to collect, for half, a 1,000-dollar insurance policy, and an agent was employed and collected $500, and defendant settled with said agent and took a seal-skin sack, notes, etc., to plaintiff's damage $300.

It appears that in the first part of January, 1887, Brice W. Hoag was the assignee and owner of the amount due upon a policy of insurance which had been issued by the National Benefit Society of New York on the life of one Myron W. Sweet, then deceased. The defendant, Graves, in the interest of Hoag, wrote to a law firm in New York by the name of Provost & Anthony, who he understood to be the representatives of a commercial agency at that point, making inquiries respecting the solvency of the company. This letter bore date January 13, 1887, and he soon received a reply signed " D. Edgar Anthony, formerly of Provost & Anthony," stating that as soon as he could ascertain the facts he would communicate them to Graves. Soon Graves received another letter from Anthony, dated January 17, 1887, stating that the society's standing was difficult of ascertainment, but he thought if their proofs were correct he could secure a settlement. He requested that the certificate, the last receipt for premium or assessment paid, proof of death of Myron

W. Sweet, and a power of attorney to him, executed under the laws of this State, be forwarded to him at once, stating, also, that he should accept no settlement of the claim at less than the face value without the consent of the beneficiary. Another letter, dated January 21, 1887, was written by Anthony, and received by Graves, in which he inclosed blank proofs of death, and again requested that a power of attorney be executed by Hoag and sent to him. The proofs of death were executed and forwarded, but the power of attorney was not then sent. These proofs were returned as not properly executed, and also there was inclosed a power of attorney, and a request that Hoag execute it, and that it be forwarded to him as soon as possible. He requested Mr. Graves to say to Mr. Hoag that he would be subject to no expense whatever in the matter unless the claim was collected without full authorization from Hoag to him; that the only purpose of the power of attorney was to expedite a settlement, and it would inure only to Hoag's benefit. Thereupon Hoag executed the power of attorney, as follows:

"KNOW ALL MEN BY THESE PRESENTS, that I, Brice W. Hoag, of the city of Adrian, county of Lenawee, and State of Michigan, have made, constituted, and appointed, and by these presents do make, constitute, and appoint, D. Edgar Anthony, Esq., of New York city, my true and lawful attorney for me, and in my name, place, and stead, to liquidate, settle, and adjust my claim for one thousand dollars against the National Benefit Society of New York, arising from certificate No. 3,977 of clause No. 2, issued by said society on life of Myron W. Sweet, lately deceased, and payable to me as beneficiary and creditor, giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney or his

substitute shall lawfully do, or cause to be done, by virtue hereof.

"In witness whereof I have hereunto set my hand and seal the 29th day of January, one thousand eight hundred and eighty-seven.

"BRICE W. HOAG. [L. S.]

"Sealed and delivered in presence of
"B. F. GRAVES.
"R. W. LAKINS."

The execution of the power of attorney was duly acknowledged and certified, and the power of Attorney was forwarded by Mr. Graves for Mr. Hoag to Anthony. On June 1, 1887, an agreement was entered into between Graves and Hoag, a copy of which is as follows:

"ADRIAN, June 1, 1887.

"In consideration of this agreement it is understood and agreed between Brice W. Hoag and B. F. Graves that the said Graves now has in his hands for collection a claim of $1,000 on certificate 3,977 of National Benefit Society, New York, issued upon the life of Myron W. Sweet; and, said claim having been admitted by the society, it is agreed that said Graves is to be responsible for all costs or expenses incurred in said collection, and all attorney's fees and every expense whatever. And in case nothing is collected, he shall receive nothing for his services or said costs or expenses, and, in case a collection is made, then the said Graves is to receive one-half of all the moneys collected to pay him for his services, expenses, charges, and attorney's fees of every kind and nature, and the said Hoag the other one-half, clear from all expenses and charges, and all drafts to come in the name of said Brice W. Hoag.

"B. F. GRAVES.
"BRICE W. HOAG."

The fact that the company admitted liability was derived through a letter from Anthony to Graves. Quite a correspondence passed between these parties, and Graves testifies that he showed all of the letters received by him from Anthony to Hoag, and plaintiff testifies that he saw perhaps a dozen such letters. Anthony collected on

June 24, $500. After several days' delay he retained from the amount $100 for his services, and forwarded a draft for $400, payable to the order of Brice W. Hoag. He receipted to the insurance company for this money as the attorney in fact of Brice W. Hoag. Graves handed the draft over to Hoag, who drew the money upon it, retained $250, and gave $150 to Graves. On July 15, 1887, Anthony collected the balance of $500 from the insurance company, and signed the receipt for the full amount, as follows:

"BRICE W. HOAG, Creditor of Myron W. Sweet, by D. EDGAR ANTHONY, Attorney in Fact."

He kept the whole of the second $500, and the plaintiff claims that Anthony is the subagent of Graves, and not his agent at all; and because the contract between Hoag and Graves, of date June 1, 1887, recites that Graves has in his hands for collection a claim of $1,000 on certificate 3,977 of the National Benefit Society of New York, he is liable to him for $250 collected by Anthony, and which Anthony has neglected and refused to pay over. After hearing all the testimony, the circuit judge charged the jury as follows:

"The question presented in this case is one of those interesting ones which arise in trial of cases, and which, by reason of the endless combination of facts, there seems to be no end or limit to. It seems to the court that the controlling question here was whether, from the time of the making of the contract of June 1, the man Anthony was under the control of Mr. Graves or of Mr. Hoag; and when that question is solved, it solves the case for that matter. I cannot quite understand how it would be possible that Mr. Graves could be held responsible for the conduct and acts of Mr. Anthony unless he had the power to control him, and, indeed, take the business out of his hands if it became necessary. And it seems to the court that by the power of attorney of January 29 the man Anthony, under the circumstances, as they seem to have been disclosed by the testimony, was the agent of

Mr. Hoag; that, at the time when the contract of June 1 was made, it was understood between the parties as to what the situation was. If that contract had been intended to have been construed as taking the authority of Mr. Hoag from Mr. Anthony, and putting the control of Mr. Anthony in the hands of Mr. Graves, it hardly seems to me that that kind of a contract would have been drawn. It does not seem to me that the contract goes far enough to do that, and, as I said before, if it does not do that it does not quite seem to me that it could be said that it was understood between the parties that Mr. Graves should be responsible for the acts of Mr. Anthony, except in so far as the contract specifies; that is, he should be liable for his acts in whatever costs he might make, and things of that kind; but for the misfeasance of Mr. Anthony, it does not seem to me that the contract goes far enough. With this in view, it seems to me that the duty is upon the court to instruct the jury to return a verdict for the defendant."

We think the view of the circuit judge is correct. The legal principle involved is well expressed by Mr. Mechem in his work on Agency, at section 197, as follows:

"If an agent employs a subagent for his principal, and by his authority, expressed or implied, then the subagent is the agent of the principal, and is directly responsible to the principal for his conduct, and, if damage results from the conduct of such subagent, the agent is only responsible in case he has not exercised due care in the selection of the subagent. But if the agent, having undertaken to transact the business of his principal, employs a subagent on his own account to assist him in what he has undertaken to do, he does so at his own risk, and there is no privity between such subagent and the principal. The subagent is therefore the agent of the agent only, and is responsible to him for his conduct, while the agent is responsible to the principal for the manner in which the business has been done, whether by himself or his servant or his agent."

The written agreement cannot be contradicted by parol testimony, but it must be construed in the light of the circumstances and situation of the parties as they existed

at the time it was executed. The circumstances were that Hoag had already made Anthony his attorney in fact to liquidate, settle, and adjust this claim against the insurance company. He was at the time the contract of June 1 was entered into the agent and attorney of Hoag, and there is no evidence that he ever revoked his authority. Anthony received the money of the insurance company by virtue of his power of attorney from Hoag, and not by virtue of any authority he received from Graves. He did not act, or claim to act, as the agent of Graves, or by virtue of any authority received from him, and was in no sense a subagent of Graves, but was the immediate agent of Hoag. The authority conferred upon Anthony was to liquidate, settle, and adjust the claim, and this authorized him to receive the money due upon the claim, and thus liquidate it. Hoag recognized this authority in receiving without question the draft as avails of the first payment made upon the claim, and which was received after the execution of the contract of June 1. The relations between Hoag and Anthony had not changed when Anthony, as the agent of Hoag, received the balance of the claim, and gave a receipt in Hoag's name, by himself, as his attorney in fact, in full liquidation of the whole claim.

The plaintiff's cause of action, as stated in his declaration, is that Graves collected $500 through his agent, and neglected and refused to pay plaintiff his half. There was no evidence showing or tending to show that Anthony, who collected the money, was the agent of Graves, but, on the contrary, it was conclusively shown that he was Hoag's agent, and it follows that the plaintiff entirely failed to make his case.

The judgment is affirmed.

The other Justices concurred.