## FANSET v. GARDEN CITY STATE BANK.

Where a regular customer of and depositor in a bank had an understanding with the bank by which he was to deposit out of town checks and receive credit therefor, but was to be charged with checks which were not paid, and no charge was to be made for collecting such checks, the bank takes such a check for collection only, and is not a purchaser thereof.

When an agent employs another person to assist him in transacting the affairs of his principal, the person so employed is a "subagent"; and authority to appoint a subagent is usually implied where, from the nature of the agency, such employment is necessary, and where the agent has authority to employ subagents he will not be liable for the acts or omissions of the subagent, unless in the appointment of such subagent he is guilty of fraud or co-operates with the subagent in such acts or omissions; and this rule seems to be

in accordance with Civ. Code, §§ 1699-1701, providing that an agent, unless specially forbidden by his principal to do so, can delegate his powers to another person when the act is purely mechanical, or is such that the agent himself cannot perform it, or when it is in accordance with the usage of the place, or when such delegation is specially authorized; and if the agent employs a subagent without authority he makes such subagent his agent; but a subagent lawfully appointed represents the principal in the same manner with the original agent.

Where a regular customer of and depositor in a bank who had an understanding with the bank by which he was to deposit out of town checks and receive credit therefor, but was to be charged with checks which were not paid, deposited a check in the bank which was payable in a distant city, the bank will not be liable for the loss of the proceeds which one of the agents through which the bank endeavored to collect the check, failed to transmit, in the absence of fraud or negligence on the part of the bank, as the depositor, by implication, authorized the collection of the check through subagents and the transmission of the proceeds back to the bank through the customary course of banking business, although when paper is delivered to a bank for personal collection, or is made payable at the same bank or in the same vicinity, or when the bank sent the paper to the bank against which it is drawn, the bank will be liable for the proceeds.

(Opinion filed, Nov. 17. 1909.)

Appeal from Circuit Court, Clark County. Hon. GEORGE H. MARQUIS, Judge.

Action by M. O. Fanset against the Garden City State Bank. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

*C. G. Sherwood,* for appellant. *Glass & Snyder,* for respondent.

McCOY, J. It appears from the record that on September 14, 1905, I. H. Fanset received a check from Le Sueur & Bradford of Minot, N. D., drawn on and payable at the Union National Bank, situated at Minot, N. D., for the sum of $500. This check I. H. Fanset indorsed in blank and handed the same, together with the passbook of M. O. Fanset, the plaintiff, to the Garden City State Bank at their banking house. The book was handed to the bank officer at the bank window, without comment, and the check was placed to the credit of M. O. Fanset in her passbook. I. H. Fanset at that time was acting as the agent of

M. O. Fanset, his wife, and knew that the Garden City State Bank could not collect this check by any of its ordinary officers or servants, and knew they would send it for collection through the ordinary course of their business to some correspondent. I. H. Fanset testified, "I supposed that all checks deposited by me were subject to collection." F. E. Gibson, one of the officers of said bank, testified that prior thereto he had had conversation with I. H. Fanset in which he stated that the bank would take such checks for collection, and if he received the money for the checks he would accept it, and if he did not he would charge them back to Fanset with costs of collection. Fanset did not deny such conversation, but said that he had no recollection of such conversation. On September 14, 1905, the said Garden City State Bank sent the said check to one of its correspondents, the Sioux Falls Savings Bank at Sioux Falls, S. D. That the Sioux Falls Savings Bank sent the same to the Swedish American National Bank of Minneapolis, Minn., on September 16, 1905. The Swedish American National Bank of Minneapolis, Minn., sent this check to the Minot National Bank of Minot, N. D., and it was paid by the Union National Bank of Minot to the Minot National Bank on September 18, 1905. That the Minot National Bank on September 18, 1905, sent a draft for the amount of this check, less their collection fees, to the Swedish American National Bank, drawn on the Merchants' National Bank of St. Paul, Minn. That this draft of the Minot National Bank was protested for nonpayment by the Swedish American National Bank in due form on September 20, 1905, and has never been paid. That immediately after the sending of said draft the Minot National Bank closed its doors on account of insolvency, and that all of said banks, including the Minot National Bank, were, at the time of receiving said check by the Garden City State Bank, of good repute.

M. O. Fanset, as plaintiff, brought this suit against the defendant, the Garden City State Bank, to recover the said amount of $500 credited in her favor in her passbook on account of the delivery of said check to the Garden City State Bank. The defendant resists such recovery, claiming that the said check was

delivered to said bank for collection and credit in the ordinary and usual course of its banking business, that it did not purchase the said check of said Fanset, and that the said credit in said pass-book was not intended as a permanent credit unless said check was collected. The defendant further contends that the said Minot National Bank, on account of whose' default the said proceeds of said check was lost, was then acting as the agent of plaintiff, and not as the agent of the defendant, and the defendant, Garden ity State Bank, is not liable on such transaction to the plaintiff for the payment of said $500 credited to her in said pass-book, but that plaintiff must look to said Minot National Bank. The cause was tried to the court without a jury on stipulation of the parties, and the court made findings and rendered judgment in favor of the plaintiff. The defendant moved for a new trial, which was overruled, and now brings the cause to this court challenging the correctness of the findings and judgment.

There are but two questions before this court for consideration: (1) Was said check delivered to defendant for collection and credit only, or was the same purchased by defendant, and that defendant became the owner thereof? (2) Was the Minot National Bank the agent of plaintiff, or was it the agent of defendant, in making said collection from the Union National Bank of Minot, and remitting the proceeds thereof?

Under the evidence and findings of the trial court, we must answer that the Garden City State Bank took the said check for collection and credit only, and not as a purchaser, and that the relationship of debtor and creditor did not exist between plaintiff and defendant by reason of such transaction. The second finding of fact made by the trial court is as follows: "On September 14, 1905, the plaintiff was, and for a long time prior thereto had been, a regular customer of and a general depositor in said bank, and there was an oral agreement or understanding between the plaintiff and defendant bank, whereby the plaintiff was to be permitted to deposit checks, such as the one hereinafter in these findings mentioned, in defendant bank, and receive credit for the amounts thereof in his account with the bank at the time or times of such deposit or deposits, and the defendant bank was to be per

mitted to charge against him in said account the amount or amounts of any such check or checks not honored and paid by the bank or banks on which the same was or were drawn, but in the meantime, and until the dishonor of a check so deposited, the plaintiff was to be permitted to draw or check upon the amount thereof so credited, as though it were cash deposited, and no charge for collecting such checks so deposited, exchange expenses excepted, was to be made by the defendant bank against the plaintiff; the defendant bank receiving no consideration for receiving, crediting, and collecting such checks, other than such as naturally followed or accrued to it from its relations with the plaintiff as a customer and depositor." In Re State Bank, 56 Minn. 119, 57 N. W. 336, 45 Am. St. Rep. 454, on precisely the same state of facts as found by the trial court this finding, it was held that the paper was taken for collection and credit, and that title thereto did not pass to the bank by such transaction. The court by Mitchell, J., said: "The general rule is that upon a deposit being made by a customer in a bank, in the ordinary course of business, of money drafts or other negotiable paper, received and credited as money, the title of the money drafts or other paper immediately becomes the property of the bank, which becomes debtor to the depositor for the amount; and, if no other facts appeared than these, they would be held to conclusively show that such was the intention. But the question is one of the agreement of the parties, and neither the fact that the indorsement of the paper by the customer was unrestricted, nor that he was, before collection, credited with the amount on his account, with the privilege of drawing against it, is conclusive on the question of the ownership of the paper. It was in fact delivered to the bank for collection, or for collection and credit, and a credit to the customer before collection will be deemed merely provisional, which the bank may cancel if the paper is not paid by the maker or drawer." Bank v. McDonald, 51 Cal. 64, 21 Am. Rep. 697; First Nat. Bank of Omaha v. Bank of Moline, 55 Neb. 303, 75 N. W. 843; 3 Am. & Eng. Ency. 843; 5 Cyc. 502.

When an agent employs other persons to assist him in transacting the affairs of his principal, the person so employed is called

a "subagent;" and, where an agent has authority to employ sub-agents, he will not be liable for the acts or omissions of the sub-agent, unless in the appointment of such subagent he is guilty of fraud or negligence, or co-operates with the subagent in such acts or omissions.  I Am. & Ency, 981; Kentucky Bank v. Adams Express Co., 93 U. S. 174, 23 L. Ed. 872; Loomis v. Simpson, 13 Iowa, 532; Williamsburg Ins. Co. v. Forthingham, 122 Mass. 193; 31 Cyc. 1429; Hoag v. Graves, 81 Mich. 628, 46 N. W. 109; Breck v. Meeker, 68 Neb. 99, 93 N. W. 993; Fritz v. El. Co., 136 Iowa, 609, 114 N. W. 193; Wright v. Isaacks, 43 Tex. Civ. App. 223, 95 S. W. 55; Groscup v. Downey, 105 Md. 273, 65 Atl. 930; Bank v. Johnson, 6 N. D. 180, 69 N. W. 49; Exchange Bank of Pittsburg v. Bank of New York, 112 U. S. 276, 5 Sup. Ct. 141, 28 L. Ed. 722.  This seems to be the rule established in this state by sections 1699-1701, Civ. Code.  Sherman v. Port Huron Co., 13 S. D. 95, 82 N. W. 413.  Express authority to appoint subagents is not always necessary.  Such authority is usually to be implied when the agency obviously, and from its very nature is such as to make the employment of subagents necessary.  In such cases the employment of subagents is presumed to have been contemplated when the power was given, and the agent has implied authority to appoint such subagents within the limits of the necessities of the case.  31 Cys. 1427; 1 Am. & Eng. Ency. 981; Bank v. Western Union Tel. Co., 52 Cal. 280; Gum v. Trust Co., 1 McCreary, 51 Fed. Cas. No. 5,867; Corcoran v. Hinkel, 34 Pac. 1031; Davis v. King, 66 Conn. 465, 34 Atl. 107, 50 Am. St. Rep. 104; Breck v. Meeker, 68 Neb. 99, 93 N. W. 993; Bank v. Johnson, supra.  In this last case, Bank v. Johnson, being a case involving very similar issues to the case at bar, where a certificate of deposit had been deposited with a bank for collection and credit, the North Dakota Supreme Court held that until the certificate of deposit had been collected, and the money received by such bank, the relation of principal and agent existed between the owner of the certificate and the bank, and that the relation of debtor and creditor would not exist until the bank, with whom the certificate had been deposited, had received the money.  The court, speaking by Corliss, J., said:  "Until the

bank should have collected the certificate, the relation of principal and agent would exist between the bank and the owner of the certificate.   Any advance or credit which it might make prior to that time would not in any manner prejudice the owner's right to it, or to other property, in the hands of the subagent bank which had been substituted for it.   The owner of the certificate, having employed bank agencies to collect his paper—having placed it in the channels of banking business for that purpose—he must be deemed to have assented to the usages of banks in transacting business of that character.   Having made no provision to have the identical money collected sent to him, he must be deemed to have assented to the transmission of the money from one subagent to another, and finally to the original agent, by the well-known and universally employed system of bank credits, and, not having made provision for the transmission of the actual cash from bank to bank, he must be deemed to have agreed that the remittance should be made, through such intermediate agent as should be engaged in the collection and transmission, by bank credits and debits.'

Hence we conclude that the plaintiff, Fanset, delivered the check in question to the Garden City State Bank, for collection and credit, and that plaintiff, by implication, authorized the said Garden City Bank to employ others as subagents, to make the collection and transmit the proceeds thereof back to the defendant through the ordinary and customary course of banking business, and through ordinary banking channels, and that, by reason of the fact of the said proceeds of said check never having been received by defendant, the relation of creditor and debtor, of the amount represented by said check, did not at any time exist between plaintiff and defendant, and that the defendant, in the absence of any showing of fraud or negligence on the part of defendant in selecting of such subagents, is not liable to plaintiff on account of the deposit of said check, but that plaintiff must look to the subagent, the National Bank of Minot, through whose failure the proceeds of the check were lost.   We are aware of the fact that there is some seeming conflict of authorities in regard to generally apparent similar circumstances; but the conflict is more

"seeming" and "apparent" than real. Where paper is delivered to a bank, or other agent for personal collection, where it is presumed that the bank, or other agent, will personally make the collection, as where the paper is made payable at the same bank, or in the same vicinity, or where the bank sends the paper to the bank against which it is drawn, in all such or similar cases, it is generally held that the agent is liable for the acts or omissions of the subagent; but when, from the very necessities of the case, the agent employed to collect cannot personally make the collection of paper in a far distant locality, and the principal knows it is to be sent to such far distant locality, through the ordinary and customary channels to subagents, as in the case at bar, then, in the absence of fraud or negligence on the part of the agent, it seems to be generally held, by all courts of last resort and textwriters, that the agent is relieved of liability, and that the principal must look to the subagent, whom he has expressly or impliedly authorized to act for him; but, in all cases where there is no express or implied authorization of the subagent, the agent himself is held to be liable.

The judgment of the circuit court is reversed, and a new trial granted, and the case remanded to the circuit court for further procedure in accordance herewith.