Wasson, Treasurer, v. Lamb, Assignee.

Judgment affirmed.

Filed Nov. 2, 1889.

———————◆———————

No. 14,284.

WASSON, TREASURER, v. LAMB, ASSIGNEE.

INJUNCTION.—*Taxes.*—*Receipts for.*—*Transfer of to Bank.*—*Cash Credit.*—*Payment.*—*County Treasurer.*—*Assignment.*—*Lien.*—*Fraud.*—Where a county treasurer transfers to a bank receipts for taxes due from it, receiving credit therefor as for so much cash deposited, and checks against it, drawing the amount out of the bank, in the absence of fraud the transaction is consummated as if the bank had paid the taxes in cash and received the money on deposit; and after an assignment by the bank, an injunction will lie to prevent the enforcement of the alleged lien for said taxes.

BANK.— *Receipts for Taxes.*— *Deposit.* — *When Considered Made.*—*Pass-book Entry.*—*Misrepresentations of Solvency.*—Although the credit for the amount of the tax receipts is not entered on the books of the bank until five days after it is credited in the pass-book, the deposit will be deemed to have been made when credited in the pass-book; and a county treasurer who after that time checks out more than he deposits, including the amount credited for taxes, is uninjured by misrepresentations of the solvency of the bank.

SAME.—*Debits and Credits.*—*Entry of.*—*Balance.*— *When Considered Struck.*—Where money is paid into and drawn out of a bank, or other debts and

Wasson, Treasurer, v. Lamb, Assignee.

credits are entered by the consent of both parties in the general banking account of the customer, a balance may be considered struck at the date of each payment or entry on either side of the account.

SAME.— *Deposit.*— *Cashier.*— *Bank-book Entry.* — *Effect of.*— *Admissions.* — Where a deposit is made, the amount and date thereof being entered by the cashier or teller in the bank-book of the depositor, such entries, when made by the proper officer, bind the bank as admissions.

SAME.—*Checks and Drafts Received as Deposits.—Title to Same.—Liability of Bank.—Depositor.*—If checks, drafts, or other evidence of debt are received in good faith as deposits, the bank crediting them as so much money, the title to the checks or drafts is immediately transferred to the bank, which becomes legally liable to the depositor as for so much money deposited.

From the Marion Circuit Court.

*J. S. Duncan, C. W. Smith* and *J. R. Wilson*, for appellant.
*R. Hill*, for appellee.

MITCHELL, J.—This is an appeal from a judgment and decree of the Marion Circuit Court, by which Wasson, as treasurer of Marion county, was perpetually enjoined from asserting or enforcing an alleged lien for taxes against certain real estate which had been transferred to Robert M. Lamb, as the assignee of Alfred and John C. S. Harrison. The question for decision arises upon the following facts: In April, 1884, Wasson was the treasurer of Marion county, and for some months prior thereto kept an account in Harrison's bank, a private banking house owned and conducted by Alfred and John C. S. Harrison in the city of Indianapolis. With a view of inspiring confidence in the solvency of the firm, and to induce the appellant to believe that their bank was a safe place for the deposit of money, one of the partners at divers times prior to the 23d day of April, 1884, falsely represented to him that the firm was solvent. These representations, although relied on by the appellant, were known to be false by the member of the firm who made them. On the date above mentioned, the appellant, as county treasurer, delivered to the partner above referred to receipts for taxes due from himself and the firm, and others, to the

amount of $2,086.65, that amount being at the same time entered as a credit on the pass-book, or bank-book, in which the appellant kept the account of his deposits and checks with the bank. At the time the receipts were delivered and the credit entered as above, the appellant marked the taxes as having been paid on the tax duplicate, and charged himself with the several amounts. This credit included the amount assessed and due as the taxes, the collection of which was enjoined by the decree from which this appeal is prosecuted. It appears that the credit for the amount of the receipts was not entered on the books of the bank until the 28th day of April, 1884, five days after it was credited by a member of the firm on the appellant's pass-book, at which time the balance to his credit was $49,764.67. The appellant's bank-book was balanced on the 10th day of May, 1884. The balance included the amount of the tax receipts. After that date the appellant made deposits and drew checks against his balance until in July, 1884, when, the bank being insolvent, suspended payment and made an assignment, with a balance standing to the credit of the appellant amounting to $9,233.72. If the amount of the tax receipts is considered as having been deposited in the bank as of the date the credit was entered on the appellant's pass-book, then he has drawn out more than he deposited since that date, including the $2,086.65. If, however, it is not to be considered as deposited until it was entered on the books of the bank, no part of it has been since drawn out. The learned court below was of the opinion that the deposit should be considered as made when the appellant was credited with the amount on his pass-book, and that having since that time checked out more than he has since deposited, including the amount credited for taxes, he was in no way injured by the misrepresentations concerning the solvency of the bank.

This conclusion is unquestionably correct. The general rule which governs in keeping the account between a bank and a depositor is, that as money is paid in and drawn out,

or other debts and credits are entered by the consent of both parties, in the general banking account of the customer, a balance may be considered as struck at the date of each payment or entry on either side of the account. *Nat'l Mahaiwe Bank* v. *Peck*, 127 Mass. 298; *Lamb* v. *Morris*, 118 Ind. 179. Ordinarily, whenever a deposit is made the amount and date thereof are entered by the cashier or teller in the bank-book or pass-book of the depositor, and such entries when made by the proper officer bind the bank as admissions. In some cases it has been held that they become conclusive upon the bank like an account stated, when the bank-book is balanced. Morse Banks (3d ed.), section 291. The settled rule is, where checks, drafts, or other evidences of debt are received in good faith as deposits, if the bank credits them as so much money, the title to the checks or drafts is immediately transferred to the bank, and it becomes legally liable to the depositor as for so much money deposited. *Cragie* v. *Hadley*, 99 N. Y. 131; *Metropolitan Nat'l Bank* v. *Lloyd*, 90 N. Y. 530. So, where a bank credits a depositor with the amount of a check drawn upon it by another customer, and there is no want of good faith on the part of the depositor, the act of crediting is equivalent to a payment in money. "Nor can the bank recall or repudiate the payment, because, upon an examination of the accounts of the drawer, it is ascertained that he was without funds to meet the check, though when the payment was made, the officer making it labored under the mistake that there were funds sufficient." *City Nat'l Bank, etc.,* v. *Burns*, 68 Ala. 267; *Bolton* v. *Richard*, 6 Term, 139; *Oddie* v. *Nat'l Bank*, 45 N. Y. 735 (6 Am. Rep. 160).

Where, therefore, the holder of a check, or other genuine instrument representing a fixed sum, delivers it to a bank and receives an unqualified credit as for a definite sum of money, the transaction is equivalent to an actual deposit of so much cash as of the date of the credit. *National Bank* v. *Burkhardt*, 100 U. S. 686. Thus, in *Titus* v. *Mechanics' Nat'l*

*Bank*, 35 N. J. L. 588, a dispute having arisen concerning the title to certain checks, the court said: " They were received and credited in a cash account as cash. * * By such crediting, the bank became the owners of these bills, as they do of legal tender notes or bank bills so deposited. And had the defendants failed the next day, the plaintiffs could not have demanded these identical checks as their property, left for collection, against a receiver or an assignee in bankruptcy ; the plaintiff had received the price of these checks by having it credited on their overdrafts, and by drawing for it." *Hoffman* v. *First Nat'l Bank,* 46 N. J. L. 604 ; Morse Banks, sections 569, 570.

In like manner, according to the opinion of Lord ELDON, if bills are deposited and entered in the customer's account as cash, with his knowledge and consent, so that he becomes entitled to draw against the amount, he will thereby be precluded from claiming the bills. *Ex Parte Sargeant,* 1 Rose 153 ; *Ayres* v. *Farmers, etc., Bank,* 79 Mo. 421 ; Story Agency, section 228, note.

Upon principle, there can be no reason why, if parties choose to treat a deposit of paper, or other securities, as cash, so that it is available to the depositor as cash, the transaction should not be regarded as equivalent to a deposit of money. Thus, as was said by WALLACE, J., in *St. Louis, etc., R. W. Co.* v. *Johnston,* 27 Fed. Rep. 243 : " When a sight bill is deposited with a bank by a customer at the same time with money or currency, and a credit is given him by the bank for the paper just as a like credit is given for the rest of the deposit, the act evinces unequivocally the intention of the bank to treat the bill and the money or currency, without discrimination, as a deposit of cash, and to assume towards the depositor the relation of a debtor instead of a bailee of the paper. If the customer assents to such action on the part of the bank by drawing checks against the credit, or in any other way, he manifests with equal clearness his intention to be treated as

a depositor of money." If by mutual consent the bank and the appellant chose to treat the tax receipts as so much cash deposited to the credit of the latter, the transaction must be regarded according to the intention of the parties at the time.

The conclusion which follows from what has preceded is, that when the appellant transferred the tax receipts to the bank and received credit for the amount thereof, the transaction was, in legal effect, the same as if he had deposited the amount in cash. He had the right to draw his check against it the next moment after the credit was entered precisely as if he had made the deposit in money. Moreover, the court finds that he did check against it, so as to actually draw the amount out of the bank. This being so the result is, assuming that there was no fraud in the transaction, when the tax receipts were delivered and the taxes marked paid on the duplicate, and the appellant was credited on his bank book with $2,086.65, as cash, he, in legal effect, received the amount of the taxes in cash and the transaction was consummated and closed precisely as if the bank had paid the taxes and then received the money on deposit from the appellant on the 23d day of April, 1884. *National Bank* v. *Burkhardt, supra.*

We need not enquire whether or not the facts found present such a case as would have entitled the appellant to set the transaction aside on the ground of fraud, and obtain a preference over other creditors of the bank. It is enough to say, that having received credit as for so much cash deposited, and having checked out a sum of money after the credit was given him, which included the amount of the tax receipts, for which he obtained credit, he is not in a situation to say that the taxes, which he claims the right to collect, were not, in fact, paid. He must stand precisely as any other depositor whose money was obtained by the false representations of the officers of the bank, since he has been content to let the transaction stand until, by the assignment,

the rights of other creditors, who may be in like situation with him, have intervened. There was no error.

The judgment is affirmed, with costs.

